UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JEAN E. PIERRE, on behalf of himself and others similarly situated,

        Plaintiffs,

  - against -

GTS HOLDINGS, INC.; EMPIRE INTERNATIONAL, LTD; EMPIRE CLS WORLDWIDE CHAUFFEURING SERVICES; and any other related entities,

        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-30-15

15 Civ. 143 (PAC)

**OPINION AND ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Putative class plaintiff Jean E. Pierre sues GTS Holdings Group, LLC; Empire International, LTD; and EmpireCLS Worldwide Chauffeuring Services (collectively, "EmpireCLS") to recover unpaid minimum wages, overtime compensation, spread-of-hours compensation, and unlawfully retained gratuities under the Fair Labor Standards Act (FLSA) and the laws of New York and New Jersey.[1] *See* 29 U.S.C. §§ 206, 207, 216(b); N.Y. Lab. Law §§ 190 *et seq.*, 196-d, 663, 652, 901; N.Y. Comp. Codes R. & Regs. tit. 12, §§ 142-2.1, 2.2, 2.4; N.J. Stat. § 34:11-56a4 *et seq.* EmpireCLS moves to dismiss Pierre's New York–law claims or, alternatively, for partial summary judgment, because it contends only New Jersey law applies. (Dkt. 24.) Under New York choice-of-law principles, however, the Court concludes that New York courts would apply New York law. Accordingly, the Court denies EmpireCLS's Partial Motion to Dismiss, or Alternatively, for Partial Summary Judgment.

---

[1] The action has not yet been certified as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), or as a class action under Fed. R. Civ. P. 23.

1

## I.     Background

Pierre is a resident of New York; defendants are New Jersey corporations with their principal places of business in Secaucus, New Jersey. (Dkt. 17 ¶¶ 9, 10–13.) Pierre and putative class members worked as chauffeurs for EmpireCLS's luxury transportation business during the class period from December 2008 to the present. (*Id.* at ¶¶ 2, 16–19, 26–36.) Those services were performed both in New York and New Jersey and often between the two states. (Dkt. 33 at 2; Dkt. 34, Exh. A.) For example, Pierre conducted 323 chauffeured rides between 2009 and 2014, of which 136 took place entirely in New York,[2] and 54 took place entirely in New Jersey. (Dkt. 34, Exh. A.) Pierre crossed state lines in 133 trips. (*Id.*) In 64 of those trips, the passenger was picked up in New Jersey and dropped off in New York; in 62, the passenger was picked up in New York and dropped off in New Jersey.[3] (*Id.*)

Pierre alleges EmpireCLS failed to pay him and putative class members (1) minimum wages; (2) overtime wages; (3) spread-of-hours compensation; and (4) unlawfully retained gratuities in violation of New York, New Jersey, and federal law.[4] (Dkt. 17 at ¶¶ 39–113.) EmpireCLS moves to dismiss Pierre's New York–law claims or, alternatively, for partial summary judgment on the grounds that only New Jersey law is applicable. (Dkt. 24.)

## II.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding a motion to dismiss, the Court may consider "the complaint, the answer, any written documents attached to them,

---

[2] Pierre's summary of the records states that Pierre conducted "approximately 135" chauffeured rides entirely in New York. (Dkt. 34 ¶ 5.) The Court's review of the record reveals that number is actually 136. (Dkt. 34, Exh. A.)
[3] There are seven rides that are unaccounted for in those numbers: three from Connecticut to New York; two from New York to Connecticut; one from New York to Pennsylvania; and one from Connecticut to an unrecorded location. (Dkt. 34, Exh. A.)
[4] The FLSA claims were added after EmpireCLS removed the action to federal court. (Dkt. 17; Dkt 33 at 6.)

2

and any matter of which the court can take judicial notice for the factual background of the case." *Roberts v. Babkiewicz*, 585 F.3d 418, 419 (2d Cir. 2009).

To survive a motion for summary judgment, there must be some genuine issue of material fact. *See* Fed. R. Civ. P. 56(c). Summary judgment will not lie where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### III. Analysis

When a federal court sitting in diversity faces conflicting laws, it applies the choice-of-law principles of the state in which it sits. *See Beth Israel Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 582 (2d Cir. 2006) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). Accordingly, the Court must determine which law New York courts would apply here.

#### a. Pierre states claims under conflicting New York and New Jersey laws.

In New York, "[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *In re Allstate Ins. Co. (Stolarz)*, 613 N.E.2d 936, 937 (1993). New York and New Jersey law conflict in three ways here: (1) New Jersey does not cognize a claim for unlawful retention of gratuities, *cf.* N.Y. Lab. Law § 196-d; (2) New Jersey does not have a spread-of-hours provision, N.Y. Comp. Codes R. & Regs. tit. 12, §§ 142-2.4(a); and (3) New York's statute of limitations is six years, whereas New Jersey's is two, *compare* N.Y. Lab. Law § 198(3), *with* N.J. Stat. Ann. § 34:11-56a25.1; *see also In re Gaston & Snow*, 243 F.3d 599, 607–08 (2d Cir. 2001) (recognizing that conflicting statutes of limitations present a conflict of laws). In short, if New Jersey law applies, Pierre's does not have a spread-of-hours claim, and the abbreviated limitations period will reduce his wage-and-hour claims. Faced with this conflict of laws, the Court must determine which law to apply according to New York's choice-of-law jurisprudence.

### b. Pierre's employment-law claims are analyzed under New York's "greater interest" test.

"New York courts have adopted a flexible choice of law approach and 'seek to apply the law of the jurisdiction with the most significant interest in, or relationship to, the dispute.'" *White Plains Coat & Apron Co. v. Cintas Corp.*, 460 F.3d 281, 284 (2d Cir. 2006) (quoting *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1539 (2d Cir. 1997)). In contract cases, New York courts apply the "center of gravity" or "grouping of contacts" approach, under which courts consider the "spectrum of significant contacts," including "the place of contracting, negotiation and performance; the location of the subject matter of the contract; and the domicile of the contracting parties." *Beth Israel*, 448 F.3d at 583 (quoting *Stolarz*, 613 N.E.2d at 939–40). In tort cases, New York courts apply the "greater interest" test, whereby courts apply "the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Schultz v. Boy Scouts of Am., Inc.*, 480 N.E.2d 679, 683 (N.Y. 1985) (quoting *Babcock v. Jackson*, 191 N.E.2d 279, 283 (N.Y. 1963)).

The question is which framework—contract or tort—should apply to Pierre's statutory wage-and-hour claims. The New York Court of Appeals has not answered that question directly, but it has explained the reasoning underlying its two choice-of-law frameworks: in contract cases, the relationship of the parties and the dispute to the forum state is most important, *see Stolarz*, 613 N.E.2d at 939; in tort cases, the interest of the state in regulating tortious conduct and allocating damages predominates, *see White Plains*, 460 F.3d at 284 ("If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." (quoting *Cooney v. Osgood Mach., Inc.*, 612 N.E.2d 277, 280 (N.Y. 1993))); *Stolarz*, 613 N.E.2d at 939 ("[R]ules distributing the loss after the accident happens may implicate significant governmental interests.").

4

Here, Pierre's statutory claims are more like tort claims because they concern conduct regulation. Although his claims involve contracts (for example, his § 196-d claim is based on contracts between EmpireCLS and fares), the New York labor laws that give rise to those claims regulate employers' conduct vis-à-vis their employees. *See* N.Y. Lab. Law §§ 193 (prohibiting unauthorized deductions from wages), 196-d (prohibiting retention of gratuities). As such, the Court considers Pierre's statutory claims under the greater-interest framework. *Cf. Arakelian v. Omnicare, Inc.*, 735 F. Supp. 2d 22, 39 (S.D.N.Y. 2010) (determining Virginia had greater interest than Maryland where plaintiff only briefly worked in Maryland, her primary place of performance was Virginia, and her employer was a resident of Virginia); *Melia v. Zenhire, Inc.*, 42 Misc. 3d 1206(A), at *4-5 (Sup. Ct. Dec. 11, 2013) (determining Massachusetts had greater interest than New York where plaintiff "resided and performed his work in Massachusetts").

### c. New York has a greater interest than New Jersey in regulating EmpireCLS's conduct with regard to Pierre and similarly situated employees.

Since the greater-interest approach applies to Pierre's statutory claims, the Court must examine whether New York or New Jersey has the "greatest concern with the specific issue raised in the litigation." *Schultz*, 480 N.E.2d at 683 (quoting *Babcock*, 191 N.E.2d at 283). To do so, the Court considers the "relationship or contact" of each state to the parties and to the underlying occurrence. *Id.* (quoting *Babcock*, 191 N.E.2d at 283). "Under this formulation, the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort." *Id.* at 684 (citations omitted). And "[w]here the parties are domiciled in different states, the locus of the tort will almost always be determinative in cases involving conduct-regulating laws." *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996) (citations omitted).[5]

---

[5] Under the common law, courts exclusively applied *lex loci delicti*—the law of the locus of the tort. Although that hoary rule has since been abandoned by nearly every jurisdiction, including New York, *see Babcock*, 191 N.E.2d at 281–83, the place where the tort was committed continues to bear heavily on courts' choice of law. As noted by the New York Court of Appeals, "the jurisdiction where the tort occurred . . . has the greatest interest in regulating behavior within its borders." *Cooney*, 612 N.E.2d at 280.

5

Here, the parties are domiciled in different states: defendants are New Jersey corporations with their principal places of business in Secaucus, New Jersey; Pierre's domicile is in New York City. (Indeed, that diversity is the basis of the Court's removal jurisdiction.) Were this a typical tort case with diverse parties, the Court would simply apply the law of the "locus of the tort." *Id.* But it is not so simple here. Pierre's statutory wage-and-hour claims are not true torts. Nor is there a clear "locus" of EmpireCLS's alleged malfeasance. Nonetheless, the object of Pierre's statutory claims—and of the New York laws he invokes—is his employment relationship with EmpireCLS. And New York's interest in that relationship is greatest "within its borders." *Cooney*, 612 N.E.2d at 280. Accordingly, the Court considers the location of Pierre's employment to be the relevant "locus" here. *See Arakelian*, 735 F. Supp. 2d at 39. So if Pierre worked in New York, New York's laws apply.

But that question is not so easily answered because Pierre worked *both* in New York and New Jersey. Rather than attempt to divide his work into segments based on location—with New York law governing certain portions of his workday and New Jersey law governing others—the Court looks to where Pierre performed most of his work. *See id.* Based on undisputed employment records, Pierre conducted most of his chauffeured rides for EmpireCLS in New York. (Dkt. 34, Exh. A.) Out of Pierre's total 323 rides, 268 took place entirely or partly within New York (approximately 83%), and 203 ended in New York (approximately 63%). (*Id.*) Only 180 rides took place at least partly within New Jersey (approximately 56%). (*Id.*)

Although the Court concludes that the majority of Pierre's chauffeured rides were conducted in New York, that finding alone is not dispositive. *Cf. id.* (applying Virginia law because essentially *all* work was conducted in Virginia); *Robins*, 923 F. Supp. at 464–65 (applying New York law because *all* offensive conduct was committed in New York). The Court has also considered the other state contacts and interests raised by the parties and finds that New York's interest in the litigation is greater than New Jersey's.

6

EmpireCLS emphasizes that its business operations and fleet are based in New Jersey. (Dkt. 25 at 8–9.) To the extent those facts do not merely restate EmpireCLS's domicile, the Court finds that they do not make New Jersey any more interested in the outcome of this dispute. Pierre is a driver, not a mechanic or a customer-service representative. The vast majority of his work, by its very nature, takes place outside EmpireCLS's headquarters. EmpireCLS emphasizes that its drivers pick up and drop off their vehicles in New Jersey and sometimes have to return to the garage during the course of a workday. (*Id.* at 9.) But the fact that a workday starts and ends in New Jersey does not change the fact that most of the work itself takes place outside the state. Aside from New Jersey's general interest in regulating New Jersey employers, the state has no specific interest in regulating the conduct of employers with regards to employees like Pierre who live and conduct the majority of their work in New York.

New York, on the other hand, has a substantial interest in protecting employees who live and work in New York. *See Bierer v. Glaze, Inc.*, 2006 WL 2882569, *8 (E.D.N.Y. Oct. 6, 2006) ("New York has a strong interest in protecting its citizens from unfair treatment by their employers."). And New York has a great interest in applying its labor laws uniformly to employers who enjoy the many benefits of conducting substantial business in the state. The alternative—permitting foreign employers who do most of their business in New York to avoid New York's labor laws—would contravene New York public policy in two significant ways. First, it would permit non–New York employers to submit New York employees to what New York deems unfair employment practices. *See id.* And second, by permitting non–New York employers to avoid the costs of providing their employees the protections and benefits mandated by New York law, such employers would be able to undercut New York employers and businesses. *See id.* ("[F]oreign corporations doing business in New York must obey New York laws and conform to New York public policy."); *Evvtex Co., Inc. v. Hartley Cooper Assocs. Ltd.*, 10 F.3d 1327, 1331 n.6 (2d Cir. 1993) ("[W]hen a foreign corporation comes into this state by comity, to do its business here through its agents, it must obey our laws and

7

conform to our public policy." (quoting *Massachusetts Mut. Life Ins. Co. v. Thacher*, 222 N.Y.S.2d 339, 344 (N.Y. App. Div. 1st Dep't 1961)) (internal quotation marks omitted)).

## IV. Conclusion

The Court concludes that New York has a greater interest in the object of this dispute: the wages, hours, and gratuities of New York residents who work primarily in New York. Accordingly, New York's laws apply.

The Court DENIES EmpireCLS's Partial Motion to Dismiss, Or Alternatively, for Partial Summary Judgment. The Clerk is directed to terminate the motion at Docket No. 24. The parties are directed to submit a civil-case-management plan by December 14, 2015.

Dated: New York, New York
November 30, 2015

SO ORDERED

*[signature]*

PAUL A. CROTTY
United States District Judge

8